**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIM ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:23-cv-02245 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| SUPERINTENDENT DAVID BROWN, | ) | |
| et al., | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF CHICAGO'S AND DEFENDANT**
**SUPERINTENDENT BROWN'S COMBINED PARTIAL MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS .......................................................................... 2

STANDARD OF REVIEW ........................................................................................................ 4

ARGUMENT .............................................................................................................................. 4

   I.   Plaintiffs Have Properly Alleged a *Monell* Claim Against the City of Chicago (Count I) . 4

      A.   Plaintiffs have properly alleged that CPD's widespread practices caused their injuries and that the City was deliberately indifferent. ....................................................................... 5

      B.   Plaintiffs have properly alleged a theory of *Monell* liability based on the actions of Superintendent Brown as a final policymaker. .................................................................... 12

   II.   Plaintiffs Have Properly Alleged a Failure to Intervene Claim Against Superintendent Brown (Count VI) ................................................................................................................... 15

   III.   Plaintiffs' Remaining Claims Should Proceed ............................................................ 16

      A.   Plaintiffs' Claims Arising From Conduct of Unknown Officers Should Not Be Dismissed ............................................................................................................................. 16

      B.   There is No Basis to Dismiss Plaintiffs' Respondeat Superior or Indemnification Claims (Counts XIII and XIV) ............................................................................................. 19

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730 (7th Cir. 2002) …………………………………6

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) …………………………………4

*Alioto v. Town of Lisbon*, 651 F.3d 715 (7th Cir. 2011) …………………………………………...18

*Anderson v. Allen*, 2020 WL 5891406 (N.D Ill. Oct. 5, 2020) ………………………..…....…10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………………………………………...4

*Baker v. City of Chicago*, 483 F. Supp. 3d 543 (N.D. Ill. 2020) …………..……………. 15–16

*Bell v. Twombly*, 550 U.S. 544 (2007) …………………………………………………………4

*Bennett v. Serpas*, 2017 WL 2778109 (E.D. La. June 26, 2017) …………………………………7

*Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005) …………………………………………5

*Cambridge Group Techs., Ltd. v. Motorola, Inc.*, 2013 WL 842650 (N.D. Ill. Mar. 5, 2013) ….18

*Carmona v. City of Chicago*, 2018 WL 1468995 (N.D. Ill. Mar. 26, 2018) ……………………10

*Chatman v. City of Chicago*, 2015 WL 1090965 (N.D. Ill. Mar. 10, 2015) ………………….…4

*Cosby v. Rodriguez*, 2024 WL 167711 (N.D. Ill. Jan. 16, 2024) ………………………….. *passim*

*Czosnyka v. Gardiner*, 2021 WL 4951517 (N.D. Ill. Oct. 25, 2021) ……………………………10

*Donald v. Cook County Sheriff's Department*, 95 F.3d 548 (7th Cir. 1996) ………………..17, 19

*Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509 (7th Cir. 2007) ……………………4

*Fix v. City of Chicago*, 2022 WL 93503 (N.D. Ill. Jan. 10, 2022) ………………..…………….7–8

*Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002) …………………………………………5

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) …………………………………...6

*Glob. Relief v. New York Times Co.*, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002) ……………6

*Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030 (7th Cir. 1987) ……………………………6

*Gordon v. Degelmann*, 29 F.3d 295 (7th Cir.1994) ……………………………………………..20

*Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005) …………………………………………………15

*Hendrick v. Bryant*, 2021 WL 4502159 (N.D. Ill. Sept. 30, 2021) …………..………………...7–8

*Horton v. City of Rockford*, 2019 WL 3573566, at *3 (N.D. Ill. Aug. 6, 2019) ……………...18

*Howard v. Sheriff of Cook Cnty.*, 2016 WL 4366598 (N.D. Ill. Aug. 16, 2016) …………………7

*Kohlman v. Vill. of Midlothian*, 2009 WL 1381339 (N.D. Ill. May 15, 2009) ………………...4–5

*Lacy v. Village of Maywood*, 2022 WL 4048538 (N.D. Ill. Sept. 2, 2022) …………………18–19

*Lanahan v. County of Cook*, 2018 WL 1784139 (N.D. Ill. Apr. 13, 2018) ……..…………..13–14

*Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009) ………………………………………………...15

*McCottrell v. City of Chicago*, 481 N.E.2d 1058 (1985) …………….…………………...…….. 20

*Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014) …………………..………………….……….15

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ……………………………*passim*

*Polk v. Dent*, 2015 WL 74185 (N.D. Ill. Jan. 5, 2015) ……………………………...…………. 20

*Prate v. Vill. of Downers Grove*, 2011 WL 5374100 (N.D. Ill. Nov. 7, 2011) …………..…..... 20

*Sanchez v. City of Chicago*, 700 F.3d 919 (7th Cir. 2012) …………………………… 17, 20

*Sanchez v. Garcia*, 2015 WL 2097606 (N.D. Ill. May 4, 2015) ………………………………...10

*Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010) ………………………………………………4

*Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069 (7th Cir. 2013) …………………………………5–6

*Schmude v. Sheahan*, 312 F. Supp. 2d 1047 (N.D. Ill. 2004) ………………………………….6

*Smith v. Burge*, 222 F. Supp. 3d 669 (N.D. Ill. 2016) ………………………………………..6, 15

*Stuve v. Kraft Heinz Co.*, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023) ……………………………6

*Taylor v. City of Chicago*, 2021 WL 4523203 (N.D. Ill. Oct. 4, 2021) …………..……………9

*Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010) ……………………………5

*Treadwell v. Salgado*, 2021 WL 3129290 (N.D. Ill. July 23, 2021) ………………………....6, 9, 11

*Truhlar v. John Grace Branch No. 825 of the Na''l Ass'n of Letter Carriers*, 2007 WL 1030237 (N.D. Ill. Mar. 30, 2007) ……………………………………………………………………………6

*United States v. Wood*, 925 F.2d 1580 (7th Cir. 1991) …………………………………………...6

*Rodriguez v. McCloughen,* 49 F.4th 1120 (7th Cir. 2022) ……………………….………18–19

*Vodak v. City of Chicago,* 639 F.3d 338 (7th Cir. 2011) …………………………………………..14

*Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007) …………………………………………...20

*Widmaier v. City of Newark*, 2019 WL 1895087 (D.N.J. Apr. 29, 2019) ……………………....7

*Wright v. Vill. of Calumet Park,* 2009 WL 4545191 (N.D. Ill. Dec. 2, 2009) ……………..…... 20

*Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000) ………………………………………………4

## Other Authorities

745 Ill. Comp. Stat. 10/2–202 ……………...……………………………………………………20

Federal Rule of Civil Procedure 12 ………………………………………………….. *passim*

Federal Rule of Evidence 201 …………………………………………………………………… 6

## INTRODUCTION

During the summer of 2020, millions of people throughout the world took part in protests against police brutality and racism. Dkt. 21, Am. Compl. ¶ 1. The 26 Plaintiffs involved in this lawsuit joined these protests and sustained injuries after unidentified Chicago Police Department (CPD) officers used unjustified and excessive force against them, including striking them with batons, shields, and other objects, shoving and pushing them, and spraying them with chemical agents. *Id.* ¶¶ 66–249, 253–91, 297–420, 422–40. Plaintiffs Brittany Sowacke and Jeannine Wise were also baselessly arrested while engaging in protected First Amendment activity despite the total absence of probable cause to believe they had committed a criminal offense. *Id.* ¶¶ 188, 231. Plaintiffs Sowacke, Clare Gervasi, Kathleen Roberts, and Charlie Atchley also suffered loss or damage to their personal property including bicycles and a professional grade camera after CPD officers unconstitutionally seized their property. *Id.* ¶¶ 186, 313, 389, 394, 432–33.

Plaintiffs allege that the harms they suffered were the direct result of the City of Chicago's and CPD's *de facto* policies and practices. These policies and practices include, but are not limited to, using unjustified and excessive force against protesters; retaliating against protesters who speak out against police violence; falsely arresting protesters without probable cause; failing to adequately train officers to respond to protests; encouraging, facilitating, and ratifying brutal and unlawful conduct done anonymously by Chicago police officers toward protestors; and failing to hold accountable officers who engage in policy violations and unlawful conduct. *Id.* ¶¶ 481–94. Plaintiffs also assert that Superintendent Brown failed to intervene to protect them from the injuries they suffered at the hands of CPD officers. *Id.* ¶¶ 39, 62–64, 522–26.

Defendants City of Chicago and Superintendent Brown moved to dismiss arguing primarily that Plaintiffs failed to allege deliberate indifference as required to state a *Monell* claim

1

because, at the time of the 2020 protests, Defendant City of Chicago was subject to a Consent Decree. Dkt. 26, Defs.' Mot. to Dismiss at 8–14. Defendants' argument is inappropriate for a motion to dismiss and regardless, there is no legal support for the City's position, and for good reason. If the City's argument held water, a *Monell* Defendant could prevail by simply promising to change—even if the promised changes never materialize and even if such promises are used to conceal or shield a *de facto* policy. Despite the City's repeated arguments that the existence of a Consent Decree precludes *Monell* liability, no court has endorsed this view. The Court should therefore reject this argument, untethered as it is from law and common sense.

Superintendent Brown further argues that Plaintiffs failed to sufficiently plead that his actions caused their injuries. *Id.* at 15–18. But Defendant Brown's attempts to avoid liability for his officers' unlawful actions ignore the detailed allegations in Plaintiffs' complaint. Plaintiffs allege that Defendant Brown had knowledge that—during the protests they attended and other protests throughout the summer of 2020—his officers were engaged in widespread abusive conduct, often acting anonymously by obfuscating their identities. Despite having this knowledge, Defendant Brown failed to stop his officers from violating Plaintiffs' constitutional rights or to hold these officers accountable in order to prevent further abuse. These allegations are more than sufficient to permit Plaintiffs' *Monell* and failure to intervene claims against Superintendent Brown to proceed.

## SUMMARY OF FACTUAL ALLEGATIONS

Plaintiffs' complaint alleges that CPD's response to the summer 2020 protests was consistent with CPD's long-standing policies and practices of using abusive tactics and excessive force against protesters seeking progressive social and political change. Am. Compl. ¶ 7. CPD's violence and brutality against protesters is also consistent with CPD's widespread policy and

practice of using aggressive tactics that intimidate and unnecessarily escalate encounters with individuals, increase tensions, and lead to excessive force. *Id*. ¶ 444. CPD has maintained its widespread practice of using excessive force for well over 100 years through promoting the "code of silence" and failing to discipline Chicago police officers who engage in misconduct. *Id*. ¶ 462. CPD's widespread practices of excessive force and the code of silence have been documented and acknowledged by government reports, including the Chicago Police Accountability Task Force (PATF) Report and the Department of Justice (DOJ) Report, by City officials, including the Mayor and Superintendent of Police, and by federal courts. *Id*. ¶¶ 463–76.

CPD's systemic violations against protesters at the summer 2020 protests occurred despite the City and CPD being subject to the Consent Decree for almost two years. *Id*. ¶ 8. The Consent Decree contains a number of provisions that should have remedied the unconstitutional policies and practices that caused Plaintiffs' injuries, but CPD has entirely failed to conform its practices to Consent Decree mandates. *Id*. ¶¶ 456–59. Over 500 protest-related complaints were made to COPA as a result of the 2020 protests, the majority of which alleged excessive force. *Id.* ¶ 60. COPA's Chief Administrator reported to the City Council a number of recurring themes that were present throughout the complaints, including excessive use of batons, verbal abuse, and failures to comply with body camera requirements and policies requiring officers to display their names and badge numbers. *Id.* ¶ 61.

Defendant Superintendent Brown, who is responsible for the general management and control of CPD, made all command decisions about the CPD's systematic response to the summer 2020 protests and authorized and directed the officers' unlawful conduct. *Id*. ¶ 62. Superintendent Brown encouraged and permitted CPD officers to target, attack, and harass protesters with violent

animus, often anonymously, and took no action to halt CPD officers' systemic violence against the protesters. *Id.*

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits." *Chatman v. City of Chicago*, 2015 WL 1090965, at *4 (N.D. Ill. Mar. 10, 2015). To survive a 12(b)(6) motion, a complaint must "state a claim that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether a plaintiff has met this standard, the Court "takes all well-pleaded allegations of the complaint as true and views them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)).

## ARGUMENT

### I. Plaintiffs Have Properly Alleged a *Monell* Claim Against the City of Chicago (Count I)

Defendants seek dismissal of Count I, contending that Plaintiffs have failed to plausibly allege that the City was deliberately indifferent to their constitutional rights. Defs.' Mot. to Dismiss at 7–13.

To state a Section 1983 claim against the City under *Monell,* Plaintiffs must allege that they suffered injuries caused by the Chicago Police Department's official policies or customs. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Additionally, to demonstrate that the City is liable for a harmful practice or custom, Plaintiffs must show that the City's policymakers were

4

"deliberately indifferent as to the known or obvious consequences." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). In other words, Plaintiffs must show that the City "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect [Plaintiffs]." *Id.*

### A. Plaintiffs have properly alleged that CPD's widespread practices caused their injuries and that the City was deliberately indifferent.

Plaintiffs may demonstrate a widespread practice by alleging "a series of violations to lay the premise of deliberate indifference." *Id.* In "widespread practice" implicit policy cases, "what is needed is evidence that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome," a court can "infer that there is a policy at work, not [an] isolated incident." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

Defendants attempt to defeat Plaintiffs' *Monell* claim by arguing that "the Consent Decree's very existence demonstrates the City's 'deliberate intention to reform and improve policing practices.'" Defs.' Mot. to Dismiss at 12–13. Defendants maintain that because the City of Chicago voluntarily entered into the CPD Consent Decree, they cannot have been deliberately indifferent to the risk of harm posed by CPD's unconstitutional policies and practices. *Id.* at 10. Defendants contend that "[t]he City's ongoing efforts to reform the Department's policies and practices through the Consent Decree demonstrate a deliberate intention to *remedy* the kinds of violations Plaintiffs allege, not a deliberate indifference to such violations." *Id.* The City argues that merely because it has paid lip service to an "ongoing commitment to police reform," it cannot be found deliberately indifferent to the harm Plaintiffs suffered as a result of CPD's policies and practices. Defs.' Mot. to Dismiss at 11.

As an initial matter, this Court should reject Defendants' argument because it is not appropriate for a motion to dismiss. The crux of Defendants' argument is that, because the City has entered into a Consent Decree, the City cannot be deliberately indifferent on the facts. In making that argument, Defendants both introduce new facts that are not included in the complaint and draw inferences in their favor, neither of which is permissible in a motion to dismiss. *See Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1032 (7th Cir. 1987) (noting that when moving to dismiss a complaint, a defendant cannot "attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence."); *Smith v. Burge*, 222 F. Supp. 3d 669, 691 (N.D. Ill. 2016) (denying motion to dismiss where defendants attempted to rebut plaintiff's allegations with their own version of the facts). For example, Defendants urge that Plaintiffs cannot establish deliberate indifference because the City has "invested substantial funds in compliance costs" related to the Consent Decree, Defs.' Mot. at 9, a fact that does not appear in the complaint. *See Cosby v. Rodriguez*, 2024 WL 167711, at *20 (N.D. Ill. Jan. 16, 2024) (noting, when denying nearly identical motion to dismiss essentially the same *Monell* claim in case arising from 2020 protest, that the City's argument about the time and money it has invested in Consent Decree compliance improperly went "beyond the four corners of Plaintiff's complaint"). Defendants' argument about the City's purported reforms may belong in a motion for summary judgment, but it does not belong here. *See Treadwell v. Salgado*, 2021 WL 3129290, at *6 (N.D. Ill. July 23, 2021) (rejecting argument that City's alleged reforms defeated plaintiff's *Monell* claim as inappropriate at the motion to dismiss stage).

Furthermore, in seeking dismissal of Plaintiffs' *Monell* claim based on the existence of the Consent Decree, the City urges this Court to contravene voluminous precedent allowing *Monell* claims to proceed during the pendency of a consent decree. *See, e.g., Cosby v. Rodriguez*, 2024 WL 167711, at *20–22 (N.D. Ill. Jan. 16, 2024) (denying motion to dismiss *Monell* claim in lawsuit based on CPD's actions during 2020 protests); *Fix v. City of Chicago*, 2022 WL 93503, at *2–4 (N.D. Ill. Jan. 10, 2022) (same); *Hendrick v. Bryant*, 2021 WL 4502159, at *4 (N.D. Ill. Sept. 30, 2021) (denying motion to dismiss *Monell* claim against City of Chicago in lawsuit based on 2019 excessive force incident that occurred after City was subject to Consent Decree); *Howard v. Sheriff of Cook Cnty.*, 2016 WL 4366598 (N.D. Ill. Aug. 16, 2016) (denying motion to dismiss *Monell* claim while Cook County Jail consent decree was in effect); *Widmaier v. City of Newark*, 2019 WL 1895087, at *4 (D.N.J. Apr. 29, 2019) (denying motion to dismiss *Monell* claim against City of Newark while Newark Police Department consent decree was in effect); *Bennett v. Serpas*, 2017 WL 2778109, at *2 (E.D. La. June 26, 2017) (denying in part motion for judgment on the pleadings concerning *Monell* claim while New Orleans Police Department consent decree was in effect). This Court should rule in accordance with existing case law and reject Defendants' argument.

Multiple courts in this district have already rejected Defendants' argument in other cases arising from the 2020 protests. In *Fix*, the plaintiffs brought excessive force claims in relation to a Black Lives Matter protest that occurred in May 2020. 2022 WL 93503, at *1. There, the City similarly argued that CPD's efforts at reform defeated an inference of deliberate indifference. *Id.* at *3. The court rejected this argument, finding that "[b]ecause Chicago Police Officers have continued to use excessive force, even after the City's efforts to remedy the situation, there is a reasonable inference that the City's actions to combat this unlawful conduct have been

7

inadequate." *Id.* As in *Fix,* Plaintiffs here allege ongoing, systemic harms that persisted even in the face of Defendants' promises to "reform" the CPD. Likewise, in *Cosby v. Rodriguez*—which was part of the same original action as Plaintiffs' case with an essentially identical *Monell* claim—Chief Judge Pallmeyer denied the City's motion to dismiss the plaintiff's *Monell* claim, concluding that the existence of the Consent Decree did not defeat the *Monell* claim. 2024 WL 167711, at *20. Chief Judge Pallmeyer reasoned that, according to the plaintiff's complaint, "the Consent Decree and its concomitant IMT Reports gave the City reason to be on notice of the unlawful practices relevant to [the plaintiff's] claims, but the City failed to take measures effective to end officers' widespread unconstitutional behaviors at the protests." *Id.* at *21. Chief Judge Pallmeyer concluded that "the City's failure to change its policies in time for the 2020 protests tells a 'story that holds together' about its deliberate indifference to the means of unconstitutional policing [the plaintiff] alleges he suffered," and therefore the plaintiff had plausibly alleged a *Monell* claim. *Id.* at *21–22.

Defendants argue that *Monell* claims such as Plaintiffs' are "less plausible" as a result of the Consent Decree because "the City has made a voluntary but binding commitment to undertake an expensive and years-long process of reform." Defs.' Mot. to Dismiss at 10. But the mere existence of the Decree is not, in and of itself, evidence that any reform has taken place. The City would have to *actually comply* with the terms of the Consent Decree and implement substantive changes to correct its unconstitutional conduct—and Plaintiffs allege that, at the time of the events in question, the CPD entirely failed to comply with relevant Consent Decree provisions. Am. Compl. ¶¶ 456–59. Rather than a cure-all to CPD's long-standing unconstitutional policies, then, the Consent Decree represents Defendants' broken promises. Under these circumstances, Plaintiffs have adequately stated a *Monell* claim. *See Hendrick*, 2021 WL 4502159, at *4

(allowing a Monell claim to proceed where plaintiff asserted that "the defendant municipality had knowledge of a problem with its policies, agreed to remedy the problem, and then failed to remedy the problem").

Despite Defendants' arguments to the contrary, no precedent supports their contention that the existence of the Consent Decree defeats Plaintiffs' *Monell* claim. Defendants point to *Taylor v. City of Chicago*, arguing that the court "rejected claims nearly identical to those Plaintiffs raise here." Defs.' Mot. to Dismiss at 10–11 (citing *Taylor v. City of Chicago*, 2021 WL 4523203 (N.D. Ill. Oct. 4, 2021)). However, Defendants wholly misrepresent the holding in *Taylor.* There, the court noted that government reports—including the DOJ Report and the Independent Monitoring Report on the Consent Decree—could "buttress a *Monell* claim." 2021 WL 4523203 at *2. The *Taylor* plaintiff, however, had failed to reference the DOJ and PATF reports in his complaint, instead citing them in his motion to dismiss response. *Id.* Further, the Taylor plaintiff pleaded only "conclusory" allegations that failed to connect the dots between his injuries, the government reports, and the City's ongoing non-compliance with the Consent Decree. *Id.* Here, Plaintiffs' complaint summarizes the DOJ, PATF, and Independent Monitor reports about CPD's policies and practices and explicitly and in a detailed manner connects these reports and the City's ongoing Consent Decree compliance failures to their injuries. *Id.* at ¶¶ 444–60; *see Treadwell*, 2021 WL 3129290, at *6 (denying motion to dismiss *Monell* claim where plaintiff connected harm he experienced to allegations about City's unconstitutional patterns and practices); *Cosby*, 2024 WL 167711, at *21 (concluding *Taylor* did not support dismissal of Plaintiff's *Monell* claim because plaintiff's complaint "tie[d] the practices outlined in those reports to his specific injuries.").

9

Defendants' reliance on *Anderson v. Allen* is also misplaced. Defs.' Mot. to Dismiss at 11. In *Anderson*, a plaintiff asserting a false arrest-related *Monell* claim sought to rely on reports regarding CPD's investigatory stops. 2020 WL 5891406, at *3 (N.D Ill. Oct. 5, 2020). There, the court dismissed the *Monell* claim because the plaintiff failed to properly allege that the City's pattern and practice related to investigatory stops led to the plaintiff's unconstitutional arrest. *Id.* In the footnote cited by Defendants, the *Anderson* court noted that the reports at issue actually contradicted the plaintiff's allegations by providing data that showed CPD had "drastically reduced and reformed" its investigatory stop practices prior to his arrest. *Id.* Here, Plaintiffs rely on government reports documenting CPD's unconstitutional widespread practices, and connect those practices to their injuries during the summer 2020 protests. Am. Compl. ¶¶ 444, 448–51. And unlike in *Anderson*, none of the reports that Plaintiffs cited included evidence of "drastic reform" that reduced the frequency of CPD's constitutional violations against protesters prior to the summer of 2020, nor does any such evidence exist. *See Cosby*, 2024 WL 167711, at *21 (concluding *Anderson* did not support dismissal of plaintiff's *Monell* claim because the plaintiff "has alleged, relying in part on multiple news and investigative reports, that unlawful CPD customs continued to be widespread during the protests in which [the plaintiff] engaged, rather than dwindling or declining before his injury").[1]

Plaintiffs allege that CPD's widespread unconstitutional practices continue to occur despite the City and CPD being subject to a Consent Decree for almost two years. Am. Compl. ¶¶ 456–61. Plaintiffs allege that the City's missed deadlines and non-compliance with the Consent

---

[1] The other district court decisions that Defendants cite in which the court dismissed a *Monell* claim are inapposite for a variety of reasons. *See, e.g.*, *Czosnyka v. Gardiner*, 2021 WL 4951517, at *2 (N.D. Ill. Oct. 25, 2021) (dismissing *Monell* claim based on lack of standing); *Carmona v. City of Chicago*, 2018 WL 1468995, at *4 (N.D. Ill. Mar. 26, 2018) (dismissing *Monell* claim because plaintiff's allegations were conclusory and he did not allege how the deficiencies described in the DOJ report—which he attached to his response brief and did not reference in his complaint—related to his claim); *Sanchez v. Garcia*, 2015 WL 2097606, at *4 (N.D. Ill. May 4, 2015) (dismissing plaintiff's *Monell* claim at the summary judgment stage).

Decree bore directly on CPD's civil rights abuses at the summer 2020 protests. *Id.* ¶ 457. Plaintiffs allege that CPD failed to create adequate policies and procedures for use of force, impartial policing, and crisis intervention and failed to revise relevant use of force and accountability policies. *Id.* Plaintiffs allege that CPD's documented failure to comply with the Consent Decree deadlines coupled with its illegal and violent response to the summer 2020 protests demonstrate that the Consent Decree has entirely failed to create any meaningful change within CPD. *Id.* Therefore, based on Plaintiffs' allegations, it is reasonable to infer that the City's Consent Decree failures demonstrate an ongoing deliberate indifference to the unconstitutional police conduct at issue here because the City eschewed its obligations under the Consent Decree and continued its unconstitutional practices.

In addition to the Consent Decree, Defendants cherry pick from the complaint to point at material which, in their view, provides evidence of the City's "ongoing commitment to police reform" and defeats Plaintiffs' *Monell* claim. Defs.' Mot. to Dismiss at 11–12. In doing so, Defendants transparently invite this Court to draw inferences against Plaintiff, and thus their arguments must be rejected. *See Treadwell*, 2021 WL 3129290, at *6 (rejecting City's attempt to "isolate individual allegations" and concluding complaint read as a whole sufficiently alleged a *Monell* claim). For instance, Defendants cite to the creation of a COPA investigation team that investigated complaints arising out of the 2020 protests and highlight the handful of officers that team has referred for discipline. Defs.' Mot. to Dismiss at 11–12 (citing Am. Compl. ¶ 60). Defendants conveniently ignore the remainder of Plaintiffs' allegation, which alleges that the complaints that resulted in discipline represent a miniscule fraction of the total number, supporting rather than undermining Plaintiffs' allegations regarding the ongoing pattern and practice of failing to discipline officers who violate protesters' constitutional rights. Am. Compl.

¶ 60. Defendants also selectively pluck quotes from a speech delivered by Defendant Superintendent Brown, Defs.' Mot. to Dismiss at 12, disregarding the portions of that speech cited in Plaintiffs' complaint in which Defendant Brown confirmed the continuing existence of the code of silence and recognized the Department's ongoing problems with holding officers accountable. Am. Compl. ¶ 64. Finally, Defendants point to what they characterize as "major revisions to the Department's policies related to crowd responses in the wake of the demonstrations." Defs.' Mot. to Dismiss at 11. But rather than undermining Plaintiffs' *Monell* claim, the fact that the City revised its policies in the wake of summer 2020, well after Plaintiffs' rights were violated, is compelling evidence that the City itself recognized that the existing policies were inadequate.

Because Plaintiffs have sufficiently alleged that the City and Superintendent Brown were deliberately indifferent to the widespread unconstitutional practices within CPD that caused their injuries, Plaintiffs' *Monell* claim should not be dismissed.

### B. Plaintiffs have properly alleged a theory of *Monell* liability based on the actions of Superintendent Brown as a final policymaker.

Plaintiffs have also alleged facts that plausibly suggest that their constitutional injuries were caused by Superintendent Brown's actions. Plaintiffs allege that Superintendent Brown, through actions both explicit and implicit, authorized and directed the officers' unlawful conduct at the summer 2020 protests. Am. Compl. ¶ 62. Plaintiffs allege that Superintendent Brown encouraged and permitted CPD officers to target, attack, and harass protesters with violent animus and took no action to halt CPD officers' systemic violence against the protesters. *Id.* Plaintiffs further allege that Superintendent Brown maintained the widespread practices of CPD officers using excessive force and falsely arresting protesters and was deliberately indifferent to Plaintiffs' constitutional rights. *Id.* ¶ 490. Plaintiffs allege that Superintendent Brown was deliberately

indifferent to the need for further officer training, supervision, and discipline related to the use of force against protesters. *Id.* ¶ 492.

Defendants do not dispute that Superintendent Brown was the final policymaker for CPD's response to the summer 2020 protests. Instead, Defendants contend that "by alleging that Superintendent Brown was the final policymaker, Plaintiffs cannot state a basis for *Monell* liability" because, for Plaintiff's allegations to be true, Brown must have acted outside the City's express policies embodied by the Consent Decree. Defs.' Mot. to Dismiss at 13. Defendants' argument misses the mark. The operative policies here are not the provisions of the Consent Decree. Plaintiffs have clearly alleged that the City and CPD have failed to comply with the Consent Decree, that the Consent Decree failed to curtail excessive force by CPD, and as a result, CPD has demonstrated deliberate indifference. Am. Compl. ¶¶ 456–61. They allege that—despite the Consent Decree's existence during the summer 2020—Superintendent Brown maintained and encouraged CPD's widespread unconstitutional practices at protests. *Id.* ¶¶ 489–93. According to Plaintiffs' allegations, the Consent Decree serves as a mere veneer for the *de facto* policies within CPD: widespread excessive force and unconstitutional behavior in response to protests. Thus, Superintendent Brown did not, as Defendants suggest, directly violate the City's policies. Rather, Superintendent Brown was in fact implementing CPD's widespread *de facto* policies and practices that caused Plaintiffs' injuries.

Defendants' reliance on *Lanahan v. County of Cook* is misplaced. Defs' Mot. to Dismiss at 14 (citing 2018 WL 1784139 (N.D. Ill. Apr. 13, 2018)). The court in *Lanahan* dismissed the plaintiff's *Monell* final policymaker claim because the plaintiff, who alleged she suffered employment related retaliation, failed to sue the individual with final policymaking authority for the County and alleged that her harms resulted from an *individual's* failure to comply with the

13

*Shakman* consent decree (which prohibited political discrimination and retaliation in employment). 2018 WL 1784139, at *12. Here, by contrast, Plaintiffs are not merely alleging that Superintendent Brown as an individual has "run afoul" of the Consent Decree, but rather that he encouraged and maintained—as the final policymaker—unconstitutional policies and practices within CPD that also happen to be in defiance of the Consent Decree. And it was those unconstitutional policies and practices that Superintendent Brown furthered and implemented during the summer 2020 protests that caused Plaintiffs' injuries. *See Vodak v. City of Chicago,* 639 F.3d 338, 748 (7th Cir. 2011) (concluding, in case arising out of CPD's unconstitutional actions in response to 2003 protests against the Iraq War, that "[a]ll that matters in this case is that Chicago's police superintendent has sole responsibility to make policy regarding control of demonstrations. He was in his headquarters throughout the March 20, 2003, demonstration, not only monitoring it but also approving the decisions of his subordinates. . . . The superintendent *was* the City, so far as the demonstration and arrests were concerned."). Accordingly, Plaintiffs' *Monell* claim against the City based on the final policymaker theory should proceed.[2]

Finally, Defendants argue that Plaintiffs' *Monell* claim against Defendant Brown in his official capacity is duplicative of the *Monell* claim against the City and should therefore be dismissed. Defs.' Mot. to Dismiss at 14–15. Plaintiffs' *Monell* claim includes the legal theory of *Monell* liability through the acts of a final policymaker. However, Plaintiffs have not brought a separate *Monell* claim against Defendant Brown, who is sued solely in his individual capacity. Am. Compl. ¶ 482 ("Count I is alleged against Defendant City of Chicago"); ¶ 39 ("[Brown] is

---

[2] Defendants also cite *Cosby*, in which Chief Judge Pallmeyer dismissed the plaintiff's final policymaker theory of *Monell* liability, and emphasize that the plaintiff in that case has not attempted to replead. Defs' Mot. to Dismiss at 14 (citing 2024 WL 167711, at *18, 22). It bears noting, however, that Chief Judge Pallmeyer explicitly left the door open for Mr. Cosby to seek leave to amend if additional facts about Brown's involvement emerge during discovery that support the final policymaker theory. *Cosby,* 2024 WL 167711, at *22 n. 13. Discovery in that case is ongoing and, per Chief Judge Pallmeyer's express invitation, Mr. Cosby may still seek leave to amend his complaint.

sued here in his individual capacity"). Because this argument is based on an erroneous premise, this Court should disregard it.

## II. Plaintiffs Have Properly Alleged a Failure to Intervene Claim Against Superintendent Brown (Count VI)

Defendants seek dismissal of Count VI, contending that Plaintiffs' allegations are generic and inadequate to support a claim for failure to intervene against Superintendent Brown. Defs.' Mot. to Dismiss at 15–18. Defendants' contention must be rejected.

To state a failure to intervene claim, Plaintiffs must allege that Superintendent Brown: (1) had reason to know that officers were using excessive force or committing constitutional violations; and (2) "had a realistic opportunity to intervene to prevent the harm from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). Further, when plaintiffs allege systemic abuse by officers that is well-known by supervisors, those supervisors can be held liable for failing to intervene to stop the systemic abuse. *See, e.g., Smith*, 222 F. Supp. 3d at 687 (finding that supervisors who "had knowledge of the systemic torture leading to coerced confessions of innocent individuals, but nevertheless condoned it or turned a blind eye to it" could be held liable for failing to intervene to prevent officers from continuing the coercing interrogations and torture tactics; the "fact that [the supervisors] were not at Area 2 at the time of Plaintiff's torture and coerced confession does not absolve these Defendants under Plaintiff's theory of liability"); *see also Baker v. City of Chicago*, 483 F. Supp. 3d 543, 559 (N.D. Ill. 2020) (refusing to dismiss plaintiffs' failure to intervene claim where plaintiffs "have plausibly alleged that Defendant Officers and Defendant Supervisory Officers had the opportunity to put a stop to

15

the misconduct by refusing to participate or cover it up, by disciplining the responsible officers, or by seeking outside help . . . [y]et they failed to do so").

As explained above, Plaintiffs allege that Superintendent Brown was well aware of the widespread practices of CPD officers using excessive force against protesters, that he maintained and encouraged those practices at the summer 2020 protests, and that he took no action to halt the officer's systemic use of violence against protesters. Am. Compl. ¶ 62. Thus, even if Superintendent Brown was not physically present at all of the protests where Plaintiffs were injured, he is not absolved of liability for failing to intervene to stop Plaintiffs' injuries.

Further, Plaintiffs have alleged facts that plausibly suggest that Superintendent Brown knew that officers under his supervision and control were using excessive force and committing constitutional violations against Plaintiffs and other protesters during the 2020 protests. Plaintiffs allege that Superintendent Brown made all command decisions about the CPD's systematic response to protesters during the 2020 protests, and that he authorized and directed the officers' unlawful conduct at the protests. Am. Compl. ¶ 62. Specifically, Plaintiffs allege that Superintendent Brown encouraged and permitted CPD officers to target, attack, and harass protesters with violent animus. *Id.* Over the course of the protests, Superintendent Brown never acted to alter the tenor or conduct of the police officers. Despite Defendants' assertions to the contrary, these allegations are not generic or conclusory. Rather, it is reasonable to infer from these allegations that the constitutional violations were committed by CPD officers with not only Superintendent Brown's knowledge, but with his direction and authorization.

### III. Plaintiffs' Remaining Claims Should Proceed

#### A. Plaintiffs' Claims Arising From Conduct of Unknown Officers Should Not Be Dismissed

16

Next, Defendants argue that Plaintiffs' claims arising from the conduct of unidentified Chicago police officers should be dismissed. Defs.' Mot. to Dismiss at 18–24. They argue that Plaintiffs cannot maintain their Section 1983 claims against unidentified officers and that the claims brought against officers identified via photograph are time-barred. *Id.* Defendants erroneously claim that Plaintiffs make "oblique" references to the actions of unidentified police officers, Defs.' Mot. to Dismiss at 18, (Def. Mot. P. 18), and yet Plaintiffs have specifically set forth the unconstitutional and unlawful acts of each unidentified Chicago police officer against whom they complain. Plaintiffs' inability to identify these officers must be attributed to the City. Defendants' argument is against public policy and is an untenable attempt to evade liability and to facilitate unconstitutional conduct by Chicago police officers who refuse to identify themselves or are unable to be identified by traumatized survivors of police abuse. Moreover, the failure-to-intervene individual liability claims against Superintendent Brown could subject him to liability for failing to take reasonable steps to stop the use of excessive force used by unidentified officers. *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012) (citations omitted).

As an initial matter, Defendants City of Chicago and Superintendent Brown fail to explain how they have standing to bring a motion to dismiss on behalf of unidentified Chicago police officers. *See Donald v. Cook County Sheriff's Department*, 95 F.3d 548, 560 n. 9 (7th Cir. 1996) ("The statute of limitations is, after all, an affirmative defense, which may be waived. It may have been inappropriate to allow the Sheriff's Department to argue the statute of limitations defense on behalf of the individual defendants. As a general proposition, it is more logical to look to [the new defendant] than to [the dismissed defendant] to decide whether to plead the defense of limitations and whether to challenge the propriety of relation back."). In the original action from which this case was severed and in all the other severed cases, the City and Brown have been represented by

a different law firm than any individual officer defendants. The same would undoubtedly hold true here if Plaintiffs are able to identify any of the individual officers who assaulted them.

Even if it were appropriate for these Defendants to bring such a motion, they make no argument that the inclusion of allegations against unidentified Chicago police officers has any impact on the claims against the named Defendants. Essentially, it is simply the Defendants' preference that claims against the unidentified Chicago police officers be dismissed so they can argue that the entire case should be dismissed, but it is Plaintiffs' prerogative to determine how their complaint should be drafted. *See Cambridge Group Techs., Ltd. v. Motorola, Inc.*, 2013 WL 842650, at *5 (N.D. Ill. Mar. 5, 2013) ("The foundation of the well-pleaded complaint rule is that the plaintiff is the master of his complaint."). It is well-established that under federal notice pleading standards, Plaintiffs are not required to plead legal theories at all. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (collecting cases). Defendants do not suffer any prejudice from the inclusion of claims against presently unidentified officers, and therefore, at this early stage of proceedings, those claims should remain. *See Horton v. City of Rockford,* 2019 WL 3573566, at *3 (N.D. Ill. Aug. 6, 2019) ("[T]he Amended Complaint contains the what, where, when, and how, but not the precise 'who' for every alleged act of misconduct. That is sufficient at this stage. After all, a plaintiff 'may not be able to specify which individual committed which parts of the alleged misconduct before the benefit of discovery.'")

Furthermore, even assuming Defendants have standing to bring these arguments on behalf of the officers, Defendants' arguments that dismissal of the claims against the Officers in Exhibits B and C should be dismissed on statute of limitations grounds are premature. Defs. Mot. to Dismiss at 20–23. In the event that Plaintiffs are able to identify those officers (or any of the other currently unidentified officers), Plaintiffs may be able to establish that amending the complaint is

18

warranted under the doctrines of relation back, equitable estoppel, or equitable tolling. *See Rodriguez v. McCloughen,* 49 F.4th 1120, 1123 (7th Cir. 2022); *Lacy v. Village of Maywood,* 2022 WL 4048538, at *7 (N.D. Ill. Sept. 2, 2022); *Donald*, 95 F.3d at 561–62. Defendants argue that Plaintiffs cannot establish that the unidentified officers had notice within the statutory period for purposes of relation back. Defs.' Mot. to Dismiss at 21–22. However at this stage, where the officers are as-yet unidentified, neither party has any way of knowing what those officers knew and when. In addition, Plaintiffs have alleged that during the 2020 protests, officers who violated protesters' constitutional rights routinely took steps to conceal their identities by, *inter alia,* covering and/or removing their name plates and badges, refusing to provide their names and badge numbers when asked, obstructing protesters who attempted to view their name plates and badges, and failing to complete paperwork to document their conduct. Am. Compl. ¶ 53. Under those circumstances, equitable estoppel may apply. *See Lacy,* 2022 WL 4048538, at *7. There is simply no way to know at this stage in the proceedings. Therefore, any decision on the propriety of amending the complaint to name currently unidentified officers should be deferred until the issues are ripe.

### B. There is No Basis to Dismiss Plaintiffs' Respondeat Superior or Indemnification Claims (Counts XIII and XIV)

Finally, Defendants argue that Plaintiffs' indemnification and *respondeat superior* should be dismissed because the individual claims should be dismissed. Defs.' Mot. to Dismiss at 23–24. For the reasons stated above, it is premature to dismiss the individual federal claims against the unidentified officers, and therefore there is no basis to dismiss the indemnification claim.

More importantly, Plaintiffs' *respondeat superior* claim against Defendant City based on violations of state law by the unidentified officers will proceed even if the individual federal claims do not. Defendants' unsupported insistence that an identified officer is necessary to

19

maintain a *respondeat superior* claim against the City is simply incorrect. *Id.* at 24. The Seventh Circuit has recognized that "under Illinois law, a municipality may be held liable for battery and other willful and wanton tortious acts committed by its police officers in the course of their duties, even if the plaintiff has not been able to identify those officers." *Sanchez*, 700 F.3d at 926–27 (citing *Williams v. Rodriguez*, 509 F.3d 392, 405 (7th Cir. 2007)); *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir.1994); *McCottrell v. City of Chicago*, 481 N.E.2d 1058 (1985); 745 Ill. Comp. Stat. 10/2–202). Illinois courts have "long recognized that in an action by a third party based on injuries caused by the negligence of the servant, the servant is not a necessary party in an action against the master." *McCottrell*, 481 N.E.2d at 1059. Courts in this district have repeatedly held, based on *McCottrell*, that plaintiffs can pursue their state law claims against the City of Chicago under the doctrine of *respondeat superior* even if the offending officers cannot be named. *See, e.g., Polk v. Dent*, 2015 WL 74185, at *7 (N.D. Ill. Jan. 5, 2015); *Prate v. Vill. of Downers Grove*, 2011 WL 5374100, at *5 (N.D. Ill. Nov. 7, 2011); *Wright v. Vill. of Calumet Park,* 2009 WL 4545191, at *4 (N.D. Ill. Dec. 2, 2009). Defendants have not argued that Plaintiffs have not adequately alleged violations of Illinois state law, and therefore there is no basis to dismiss Plaintiffs' *respondeat superior* claim against the City of Chicago.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Partial Motion to Dismiss Plaintiffs' Amended Complaint.


Dated: May 23, 2024                          Respectfully submitted,

                                             /s/ Nora Snyder
                                             Nora Snyder
                                             Brad J. Thomson, Janine Hoft,
                                             Ben Elson, Jan Susler, Hakeem Muhammad

20

People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070

/s/ Vanessa del Valle
Vanessa del Valle
Macarthur Justice Center
Northwestern University School Of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-5932


/s/ Jonathan Manes
Jonathan Manes
MacArthur Justice Center
160 E. Grand Ave, 6th Fl.
Chicago, IL 60611
312-503-0012


***Counsel for Plaintiffs***